# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| E. ISAIAH ISRAEL KING, | :: | PRISONER CIVIL RIGHTS |
| Plaintiff, | :: | 42 U.S.C. § 1983 |
| | :: | |
| v. | :: | |
| | :: | |
| DR. JOYNER, *DeKalb County Jail* | :: | CIVIL ACTION NO. |
| *Medical Provider Doctor*, | :: | 1:13-CV-0236-AT-RGV |
| Defendant. | :: | |

## ORDER AND FINAL REPORT AND RECOMMENDATION

In this pro se civil rights action, plaintiff E. Isaiah Israel King ("plaintiff") alleges that Earl Joyner, M.D. ("defendant") knowingly prescribed plaintiff Humulin 70/30, a brand of insulin to which plaintiff was allergic, causing plaintiff to suffer pain and other side effects. [Doc. 13 at 3-5]. This matter is before the Court on defendant's motion for summary judgment, [Doc. 34], and motion for leave to supplement his motion for summary judgment, [Doc. 40]. Plaintiff has not filed a response to either motion.[1] Accordingly, defendant's motions are deemed unopposed. See LR 7.1B, NDGa. Having considered the merits of the unopposed motions, defendant's motion for leave to supplement his motion for summary judgment, [Doc. 40], is **GRANTED**,

---

[1] The record indicates that the Clerk of Court sent a notice, [Doc. 35], to plaintiff on February 26, 2014, informing him of the defendant's motion for summary judgment and the twenty-one day response period.

and **IT IS RECOMMENDED** that defendant's motion for summary judgment, [Doc. 34], be **GRANTED** for the reasons that follow.

## I.  STATEMENT OF FACTS[2]

Plaintiff was diagnosed as a borderline diabetic in 2001, but controlled his diabetes without insulin until 2007.  [Doc. 37 (Pl. Dep.) at 21].[3]  At that time, doctors administered a number of different insulin brands to him, including Humulin 70/30. [Id. at 36].  Plaintiff claims that upon receiving one to four doses of Humulin-brand insulin over a 48-hour period, he experienced pain in his arms and legs, cramping, sweating and nausea.  [Id. at 36-37].  At his deposition, plaintiff testified that he is not certain that Humulin was responsible for his symptoms and that his treating physicians "were confused whether [Humulin] made the symptoms [he] was having" or whether the symptoms were merely a result of his high blood sugar levels.  [Id. at 37-38].

---

[2] Due to plaintiff's failure to respond, these facts, which are drawn from defendant's statement of undisputed material facts, [Doc. 34-1], and supplemental brief, [Doc. 40-1] and which are supported by the record as indicated, are deemed admitted.  See LR 56.1B(2)a(2), NDGa; Reese v. Herbert, 527 F.3d 1253, 1269 (11th Cir. 2008).

[3] The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

2

Plaintiff was an inmate at the DeKalb County Jail ("the jail") between August 25, 2012, and March 16, 2013.  [Doc. 36 (Joyner Aff.) ¶ 3; Doc. 37 at 56].  During that time, defendant was employed as a medical doctor at the jail.  [Doc. 36 ¶ 3].  Plaintiff alleges that, at the time of his arrest, he was exclusively taking insulin brand Novolog 70/30.  [Doc. 37 at 21].  Plaintiff claims to have been compliant with his insulin when it was in his possession, but admits that occasionally he was "not able to financially obtain" Novolog 70/30 because it is "very expensive."  [Id. at 25, 27-28].  When plaintiff was booked into the jail, he had no medications on his person and had last taken Novolog 70/30 approximately "a week or two prior" to his arrest.  [Id. at 27-28, 30].  On the day of his arrest, plaintiff's blood sugar tested at 479 mg/dl, which is an extremely high level.[4]  [Id. at 40; Doc. 36 ¶ 5].  Jail medical staff administered Humulin 70/30, and plaintiff's blood sugar level stabilized, testing at 113 mg/dl on August 28, 2012, just three days later.  [Doc. 36 ¶¶ 6, 8; Doc. 37 at 39-40].  Plaintiff does not dispute that his blood sugar remained at a healthy range while he was taking Humulin insulin at the jail.  [Doc. 37 at 40-41].

Approximately one week into his confinement at the jail, plaintiff learned from a nurse that the insulin being administered to him was in fact Humulin 70/30.  [Doc.

---

[4] A normal blood sugar range is between 70 and 130 mg/dl.  [Doc. 36 ¶ 5].

3

37 at 40].  Plaintiff "informed the nurse that [he] was allergic to Humulin 70/30, and that [he] would not be able to take the generic brand."  [Doc. 12 at 1].  Nonetheless, plaintiff continued to take Humulin insulin from August 26, 2012, until November 17, 2012, when he began refusing insulin altogether.  [Doc. 36 ¶¶ 8, 13; Doc. 37 at 43-44].

During the time that plaintiff refused insulin (from November 17, 2012, until his release on March 16, 2013), his blood sugar remained stable.  [Doc. 36 ¶ 13; Doc. 37 at 45].  While plaintiff was refusing insulin, he was seen in the clinic twice daily to sign medication release forms.  [Doc. 37 at 50].  After his release, plaintiff did not seek an insulin prescription again until August of 2013.  [Id. at 58].

Plaintiff alleges that the Humulin insulin he took between August 25, 2012, and November 17, 2012, caused him to suffer several side effects, including night sweats, muscle spasms, nausea, and pain and tingling in his arms, legs, and extremities.  [Doc. 37 at 41-42].  However, plaintiff did not make his first Health Services Request complaining of these symptoms until December 10, 2012, nearly a month after he had stopped taking insulin altogether.  [Doc. 36 ¶¶ 14, 16].  Plaintiff was evaluated for those symptoms on December 13, 2012, and medical personnel prescribed Gabapentin, a pain medication.  [Id. ¶ 17; Doc. 37 at 43].  The Gabapentin was "tremendously" helpful in treating plaintiff's pain, and thus, defendant re-filled plaintiff's prescription

4

for the medication.  [Doc. 36 ¶ 18; Doc. 37 at 46-48].  Each time plaintiff submitted a Health Services Request, he "was always brought to the clinic."  [Doc. 37 at 42].

Although plaintiff claims that he continues to take Gabapentin for pain outside the jail because he sustained lasting nerve damage from taking Humulin insulin while at the jail, he has never been diagnosed by a physician with nerve damage or pain related to Humulin side effects.  [Doc. 37 at 45-46, 61].  In fact, plaintiff has never spoken to a physician about the possibility that Humulin could cause ongoing nerve damage or pain.  [Id. at 61].

Despite the fact that defendant was not plaintiff's primary chronic care physician at the jail, plaintiff brought this action against him because plaintiff believes that defendant was personally capable of and responsible for ordering plaintiff's preferred brand of insulin.  [Doc. 37 at 42, 50, 55].  Plaintiff asserts that defendant refused to order Novolg-brand insulin due to its cost.  [Id. at 54-55].  Novolog insulin is not on the jail's formulary, and defendant states that Novolog was not medically necessary to treat plaintiff's diabetes.  [Doc. 36 ¶¶ 7, 12].

After plaintiff's November 22, 1013, deposition, defendants received copies of plaintiff's medical records from Piedmont Clinic, where plaintiff currently receives his diabetes medication.  [Doc. 37 at 1, 23; Doc. 41].  During his deposition, plaintiff

5

testified that outside of the jail, he exclusively takes Novolog-brand insulin. [Doc. 37 at 21]. However, plaintiff's medical records show that, on October 19, 2013, approximately one month before his deposition, plaintiff received a prescription for one year's worth of Humulin 70/30. [Doc. 41 at 8]. Those records further show that, on November 13, 2013, only nine days before his deposition, the doctor who prescribed plaintiff's current diabetes medication, Catherine Woodhouse, M.D., noted that plaintiff's "control [of his diabetes] is complicated greatly by [his] inability to afford his Humulin 70/30, which is [approximately] $100/vial @ Publix per his report. **Works better than more expensive Novolog 70/30 Blend.**" [Id. at 20 (emphasis added); see also Doc. 37 at 23]. There is no reference in plaintiff's medical records to a Humulin allergy. [See generally Doc. 41].

On both of plaintiff's October 19, and November 13, 2013, visits to the Piedmont Clinic, it is charted in plaintiff's medical history that plaintiff suffers from diabetic neuropathy. [Doc. 41 at 16, 19, 20]. As discussed in defendant's affidavit, diabetic neuropathy is a common nerve disorder affecting 60-70% of diabetics. [Doc. 36 ¶ 22]. It is a long-term effect of uncontrolled or poorly controlled diabetes, not a side-effect of a particular insulin brand. [Id.].

6

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute as to any material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party's burden may be discharged by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support [an essential element of] the nonmoving party's case."  Id. at 325.  In determining whether the moving party has met this burden, the district court must "view the evidence and all factual inferences . . . in the light most favorable to the party opposing the motion."  Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999) (citation omitted).

Once the moving party has adequately supported its motion, the nonmovant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The nonmovant may not rest upon mere allegations or denials contained in his pleadings.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  Additionally, "[t]he mere existence of a scintilla of evidence in

7

support of the [nonmovant's] position" is insufficient to defeat summary judgment. Id. at 252. Rather, the court must determine "whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." Id.

Even when a motion for summary judgment is unopposed, the movant must still show that he is entitled to judgment on the merits based on evidentiary materials in the record. Dunlap v. Transamerica Occidental Life Ins. Co., 858 F.2d 629, 632 (11th Cir. 1988) (per curiam) (holding that district court did not err in treating motion for summary judgment as unopposed where it considered the merits of the motion). "The district court need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials." United States v. 5800 S.W. 74th Ave., 363 F.3d 1099, 1101 (11th Cir. 2004). A "district court's order granting summary judgment must 'indicate that the merits of the motion were addressed.'" Id. at 1102 (citation omitted).

### III. ANALYSIS

Defendant argues that plaintiff did not present a serious medical need because plaintiff has offered no medical evidence to refute his Piedmont Clinic medical records showing that he is not allergic to Humulin 70/30, a medication that he is currently taking outside of the jail and that "works better" for plaintiff than Novolog 70/30.

8

[Doc. 40-1 at 2-3].  Defendant also asserts that plaintiff's symptoms were not severe and were successfully treated at the jail.  [Doc. 34-2 at 11-12, 20-21].  Defendant next maintains that his medical judgment that Novolog 70/30 was not medically necessary to treat plaintiff's diabetes does not amount to deliberate indifference, nor does denying medication due to cost considerations.  [Id. at 17, 19-20].  Finally, defendant contends that plaintiff cannot prove causation because he has offered no medical evidence to show that he has nerve damage or pain related to taking Humulin during his stay at the jail.  [Doc. 34-2 at 21-22].

Deliberate indifference to an inmate's serious medical needs violates the Eighth and Fourteenth Amendments, and the standard is the same under both amendments. Estelle v. Gamble, 429 U.S. 97, 104 (1976); Lancaster v. Monroe Cnty., Ala., 116 F.3d 1419, 1425 (11th Cir. 1997); Hamm v. DeKalb Cnty., 774 F.3d 1567, 1574 (11th Cir. 1985).  In order to prevail on a claim for inadequate medical treatment, a plaintiff must demonstrate (1) an objectively serious medical need, (2) that defendant acted with deliberate indifference to that need, and (3) causation.  Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009).  "Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'"  Harris v. Thigpen,

9

941 F.2d 1495, 1505 (11th Cir. 1991) (citation omitted).  As such, "an inadvertent failure to provide adequate medical care," negligence "in diagnosing or treating a medical condition," and even "[m]edical malpractice" do not rise to the level of a constitutional violation.  Estelle, 429 U.S. at 105-06.

Plaintiff has offered no medical evidence to show that he had a serious medical need as the result of taking Humulin, and, in fact, admits that he has never been diagnosed by a physician with nerve damage or pain related to Humulin side effects. [Doc. 37 at 45-46, 61].  Accordingly, plaintiff has not satisfied the first element of a medical deliberate indifference claim.  See McKnight v. Clifton, No. 6:08-cv-345-Orl-35GJK, 2010 WL 598668, at *5-6 (M.D. Fla. Feb. 17, 2010) (granting summary judgment to defendants on detainee's medical deliberate indifference claim where the record was "devoid of any evidence that Plaintiff's medical condition[, an alleged allergy to antibiotics,] was diagnosed by a physician as a condition mandating treatment").  Plaintiff also cannot show that defendant acted with deliberate indifference by prescribing plaintiff Humulin, rather than Novolog, to treat his diabetes.  "[A] simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [does not] support a claim of cruel and unusual punishment."  Harris, 941 F.2d at 1505.  Moreover, the

10

undisputed record evidence demonstrates that plaintiff's diabetes improved and remained stable during his incarceration at the jail and that plaintiff's complaints of side effects were timely and appropriately treated.  [Doc. 36 ¶¶ 6, 8, 13-14, 16-18; Doc. 37 at 39-43, 45-48, 50].  Finally, the undisputed medical evidence also indicates that plaintiff's symptoms were not caused by an allergic reaction to Humulin-brand insulin, which he continues to take to treat his diabetes, but by diabetic neuropathy. [Doc. 36 ¶ 22; Doc. 41 at 8, 16, 19, 20].  Accordingly, the Court finds that defendant is entitled to summary judgment.

### IV.  CONCLUSION

For the foregoing reasons, defendant's motion for leave to supplement his motion for summary judgment, [Doc. 40], is **GRANTED**, and **IT IS RECOMMENDED** that defendant's motion for summary judgment, [Doc. 34], be **GRANTED**.

The Clerk is **DIRECTED** to terminate the referral to the Magistrate Judge.

**SO ORDERED AND RECOMMENDED**, this 14th day of April, 2014.

_Russell G. Vineyard_
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

11